# No. 25-30481

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Nicole Ester-Capers, *Administratrix of the Succession of Timothy Darnell Capers*,

Plaintiff - Appellant

v.

Walmart Inc., *Erroneously named as* Walmart Stores Inc and Walmart Louisiana L L C,

Defendant – Appellee

On Appeal from
United States District Court for the Western District of Louisiana
No. 5:23-CV-1202

---

BRIEF OF APPELLANT NICOLE ESTER-CAPERS

---

Submitted by:

Pamela R. Jones
Downer, Jones, Marino & Wilhite, L.L.C.
401 Market Street, Suite 1250
Shreveport, Louisiana 71101

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellant | Counsel for Appellant |
|---|---|
| Nicole Ester-Capers, *Administratrix of the Succession of Timothy Darnell Capers* | Pamela R. Jones of Downer, Jones, Marino & Wilhite, L.L.C. Shreveport, LA |

| Appellees | Counsel for Appellees |
|---|---|
| Walmart, Inc. *Erroneously named as* Walmart Stores Inc. | Rebecca Sha of Phelps Dunbar New Orleans, LA |
| Walmart Louisiana, L.L.C. | Rebecca Sha of Phelps Dunbar New Orleans, LA |
| Walmart, Inc. *Erroneously named as* Walmart Stores Inc. | Caroline Perlis of Phelps Dunbar New Orleans, LA |
| Walmart Louisiana, L.L.C. | Caroline Perlis of Phelps Dunbar New Orleans, LA |

SO CERTIFIED, this the 12th day of November, 2025.

/s/Pamela R. Jones
Pamela R. Jones
Counsel for Plaintiff-Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested. This appeal arises from the district court's grant of summary judgment dismissing Appellant's claims under the Americans with Disabilities Act. The issues presented involve settled principles governing summary judgment under Federal Rule of Civil Procedure 56 and the application of established Fifth Circuit precedent. Because the record and controlling law fully frame the dispositive issues, oral argument would not significantly aid the Court in its decisional process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ii

STATEMENT REGARDING ORAL ARGUMENT ...............................................iii

TABLE OF CONTENTS ......................................................................................iv

TABLE OF AUTHORITIES.................................................................................1

JURISDICTIONAL STATEMENT.......................................................................4

STATEMENT OF THE ISSUES.............................................................................4

STATEMENT OF THE CASE ..............................................................................5

    A. Factual Background…………………………………………………………5

    B. Relevant Procedural History ………………………………………………..8

SUMMARY OF THE ARGUMENT ....................................................................9

STANDARD OF REVIEW.................................................................................. 10

ARGUMENT .......................................................................................................12

    ISSUE I. The District Court Erred in Granting Summary Judgment Because It Relied on Inadmissible Evidence and Misapplied Rule 56(c)(2)....................................................................................................12

        A. Applicable Provisions of Rule 56....................................................12

            1. Capers Objected, Shifting the Burden to Walmart………..13

2. Walmart Failed to Show that the Challenged Exhibits Were Admissible as Presented or to Explain the Admissible Form it Anticipated…………………………………………..13

3. Walmart Failed to demonstrate Relevance of Most of Its Documents …………………………………………….15

4. Documents Proffered as Proof of Negative Feedback Were Irrelevant Hearsay…………………………………...16

5. The Erroneous Admission of the Challenged Exhibits Infected the Court's Entire Rule 56 Analysis………………17

ISSUE II. The District Court Erred in Granting Summary Judgment Because It Relied on Inadmissible Evidence and Misapplied Rule 56(c)(2)..............................................................................................17

A. The District Court Used a Standard Congress Expressly Abolished to find that Capers Did Not Have an Actual Disability……………………………………………………17

B. Properly Analyzed Under the ADA, as Amended, Capers Established that He Had an Actual Disability……………………19

C. Walmart Had Actual Knowledge of Capers's Disability and Request for Accommodation……………………………………..20

1. Knowledge Arises When an Employee Communicates A Medical Condition and Requests Adjustment…………..20

2. Capers's February 6, 2019 Email Provided Direct Written Notice of Disability and Accommodation Request……………………………………………………21

3. The Email Reinforced Walmart's Preexisting Knowledge Through Management and HR………………22

4. Ducote and Baker's Cooperative Actions are Evidence of Walmart's Knowledge…………………………………..24

ISSUE III. Walmart Failed to Carry Its Initial Rule 56 Burden on Capers's ADAAA Discrimination Claim and the District Court Erred in Granting Summary Judgment on that Claim ...................................26

    A. Under Rule 56, the Court was Required to Examine Walmart's Initial Showing, Drawing all Reasonable Inferences in Capers's Favor, Before Shifting any Burden of Response to Capers…………………………………………………………….26

    B. Walmart's Motion Addressed Only "Actual" Disability, Ignoring Other Routes……………………………………………27

    C. If the Burden Shifted, Capers Produced a Prima Facie Case for Each Claim and Walmart Failed to Produce a Non-Discriminatory Reason…………………………………………...29

CONCLUSION.......................................................................................... 31

CERTIFICATE OF SERVICE..................................................................32

CERTIFICATE OF COMPLIANCE.........................................................33

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970)………………………..26

*Anderson v. Hobby Lobby, Inc.,* 477 U.S. 242, 255 (1986)………………………...27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)………………………...11

*Ballard v. Burton*, 444 F.3d 391, 401 (5th Cir. 2006)………………………………11

*Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113
    (5th Cir. 2005)………………………………………………………………26

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003)…………………………29

*EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009)…………21

*EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694–95 (5th Cir. 2014)…………………27

*Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013)…………………………..17, 20

*John v. Louisiana Bd. of Trustees for State Colleges*, 757 F.2d 698, 708
    (5th Cir. 1985)………………………………………………………………26

*Jones v. Robinson Prop. Grp., L.*P., 427 F.3d 987, 992 (5th Cir. 2005)……………..28

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)……………………...27

*Mahoney v. Ernst & Young, LLP*, 487 F. Supp. 2d 780, 812 (S.D. Tex. 2006)…..…..22

*Martínez-Negrón v. Coca Cola P.R. Bottlers*, 2016 U.S. Dist. LEXIS 201860,
    at *58–59 (D.P.R. Mar. 31, 2016)………………………………………………...22

*Maurer v. Independence Town*, 870 F.3d 380, 384-85 (5th Cir. 2017)……………..12

*Miller v. Ill. Dep't of Corr.*, 107 F.3d 483, 486–87 (7th Cir. 1997)…………………21

*Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995)……………………29

*Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)………....11

*Neely v. PSEG Tex., Ltd.*, 735 F.3d 242, 245–46 (5th Cir. 2013)…………………...18

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)……………28, 29

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)………11, 27

*Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020)………………………...21

*Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010)…………………………...29

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)…………………………30

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999)………………………………...18

*Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996)………………..20, 21

*Thompson v. Dall. City Att'y's Off.*, 913 F.3d 464, 471 (5th Cir. 2019)…………….23

*Tolan v. Cotton*, 572 U.S. 650, 660………………………………………………11, 27. 29

*Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002)……………………18

*United States v. Brown*, 553 F.3d 768, 792-793 (5th Cir. 2008)……………………14

*United States v. Ebron,* 683 F.3d 105, 133 (5th Cir. 2012)…………………………11

*Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004)…………………………24

*Windham v. Harris County*, 875 F.3d 229, 237, n. 11 (5th Cir. 2017)………………21

**Statutes**

42 U.S.C. §§ 12101, et seq…………………………………………………………...18
42 U.S.C. §§ 12101–12213……………………………………………………………9
42 U.S.C. § 12102 (1)(A)-(C)………………………………………………………...27
42 U.S.C. 12102(3)(A)………………………………………………………………28

42 U.S.C. § 12102(4)(A)……………………………………………………18
42 U.S.C. § 12111(9)(B)……………………………………………………..21
42 U.S.C. 12112(a)……………………………………………………………9
42 U.S.C. § 12112(b)(5)(A), and (2)………………………………………..9

**Rules**

29 C.F.R. § 1630.2(i)(1)(i)…………………………………………………....20
29 C.F.R. § 1630.2(j)(3)(ii)…………………………………………………19
Fed. R. Civ. P. 56…………………………………………………..passim
Fed. R. Civ. P. 56(a)……………………………………………………..10
Fed. R. Civ. P. 56(c)(1)(A)-(B)……………………………………………12
Fed. R. Evid. 401……………………………………………………………12
Fed. R. Evid. 801(d)(2)(D)………………………………………………...23
Fed. R. Evid. 803(6)(A)-(E)………………………………………………14

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because this action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* The district court entered final judgment dismissing all claims on summary judgment on July 22, 2025. ROA.818.

Appellant timely filed a notice of appeal on August 20, 2025, within thirty days as required by 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4(a)(1)(A). ROA.821. This Court has jurisdiction under 28 U.S.C. § 1291, which confers appellate jurisdiction over appeals from all final decisions of the district courts.

# STATEMENT OF THE ISSUES

I. Whether the district court abused its discretion by overruling Capers's objections to Walmart's summary judgment evidence without analysis, thereby admitting inadmissible evidence that tainted the entire summary judgment ruling on both claims.

II. Whether the district court erred in granting summary judgment on Capers's failure-to-accommodate claim by (a) applying the pre-amendment standard for "actual disability" that Congress expressly rejected in the ADA Amendments Act of 2008, (b) excluding competent evidence of Walmart's knowledge of Capers's

disability and need for accommodation, and (c) failing to view the evidence and draw inferences in the light most favorable to the non-movant.

III. Whether the district court erred in granting summary judgment on Capers's disability discrimination claim by (a) failing to require Walmart to carry its initial Rule 56 burden, (b) relying on inadmissible and improperly weighed evidence, (c) disregarding direct and mixed-motive evidence of discrimination, and (d) misapplying the *McDonnell Douglas* framework to a case involving such evidence.

IV. Whether, assuming arguendo the *McDonnell Douglas* framework applied, the district court erred by rejecting Capers's substantial evidence of pretext and granting summary judgment despite genuine disputes of material fact on discriminatory motive.

## STATEMENT OF THE CASE

A. Factual Background

Walmart terminated Store Manager Timothy D. Capers ("Capers") February 7, 2019, the day after he requested a job change as recommended by his doctor because of diabetes, high blood pressure, and two recent hospitalizations. ROA.325 (email); ROA.207; ROA.212; ROA.290 (employee history); ROA.496, Capers Dep. 98:10-24. Capers had been a loyal Walmart employee for more than thirteen years. He began in 2006, completed Walmart's management-training program, rose to

assistant store manager, and was promoted to store manager of Neighborhood Market No. 3752 in 2016. ROA.360-361. His record was strong: he was rated a "solid performer" for 2018 and earned a $45,000 performance bonus, evidence that he met company expectations in his final year of employment. ROA.293; ROA.593, Capers Dep.173:11-20; ROA.594, Capers Dep. 174:18,25; ROA.595 Capers Dep. 175:1,17; ROA.525 Capers Dep. 127:14-16. The last completed evaluation praised Capers for his dependability, flexibility, and leadership, calling him "a hard worker [who] does what it takes to get the job done" and "a leader among his peers." ROA.293. Its "Opportunities" section was forward-looking and constructive, identifying growth areas but signaling that Walmart envisioned a future for him with the company. ROA.294.

Capers's serious medical conditions—including diabetes, high blood pressure, and stroke—were well known to Walmart by mid-summer 2018. Capers suffered a stroke in July 2018 that caused right-sided weakness, slowed speech, and reduced stamina, substantially limiting major life activities such as walking, speaking, and working. ROA.372- 793; ROA.397. The following month, Capers became ill at work, exhibiting stroke symptoms. ROA.372–373. His wife, Nicole Capers, picked him up and took him to the hospital, while Capers's Assistant Manager Tamonica Oes notified their supervisor, Market Manager Brian Ducote, that Capers was hospitalized threatening a stroke. ROA.662. Ducote called the

hospital, speaking first to Mrs. Capers who told Ducote of her husband's July 2018 stroke and present recurrent stroke symptoms. ROA.372–373. Capers, from his hospital bed, also spoke directly to Ducote. *Id.*

Walmart's HR department later contacted Mrs. Capers to help her file a critical illness claim, instructing her to send medical documentation to Walmart. She provided records confirming a diagnosis of "permanent neurological deficit" and right-hand weakness so severe he could not hold a pencil. ROA.372-373; ROA.380-381.

In October 2018, Capers told HR representative Matthew Baker that because of his stroke and ongoing health limitations he wanted to step down to a less demanding role. ROA.486-487, Capers Dep. 88:20-25; 89:1-9; 89:21-24; ROA.496 Capers Dep.98:13-20. Capers identified an opening in another store, with Store Manager Kamesha West, who welcomed his transfer, and Baker agreed the step-down could be done. ROA.664. Though he continued to experience fatigue, right-sided weakness, and slowed speech, Capers led his store through the fiscal year, receiving a $45,000 bonus for having met his goals. ROA.372-373; ROA.525, Capers Dep. 127:14-16. After year-end and receipt of the bonus, Capers pursued the step-down transfer in February. Baker advised him to coordinate with Market Manager Ducote. ROA.486-487.

The day before termination, Capers met with Ducote at Ms. West's store (location of the assistant manager openings) to discuss the step-down transfer request in person. ROA.487-488. Ducote supported the change and told Capers to put it in writing to HR. *Id*. Mr. Capers did so that day, sending an email to Baker, copied to Mr. Ducote, with the subject line "request." ROA.325. The email stated:

> Hello Matt,
>
> I would like to put in request to step down because of health reason. I have been struggling with my health for the past year high blood pressure and getting my blood sugar levels under control. I was in the hospital in July and August for these issues. Had conversation with my doctor and he feels i should try something different.
> thanks
> Tim Capers
> Store Manager 03752

The very next day Ducote telephoned Capers and said, "I can't do it." ROA.488 Capers Dep. 90:13,24. Walmart used the dismissal code "IPJ," Inability to Perform the Job," as the reason for termination. ROA.207; ROA.212; ROA.290.

B. Relevant Procedural History

Walmart filed a motion for summary judgment accompanied by a statement of uncontested material facts. ROA.101-102;ROA.108. Capers filed a response to the statement of facts, objections to Walmart's evidence, ROA.358, and a memorandum in opposition to the summary judgment motion. ROA.336. Walmart replied. ROA. 668. The district court entered judgment seven days later granting the motion for summary judgment and dismissing Capers's claims. ROA.818.

## SUMMARY OF THE ARGUMENT

Capers brought two claims under the ADAAA, 42 U.S.C. §§ 12101–12213: (1) that Walmart failed to accommodate his disability, § 12112(b)(5)(A), and (2) that Walmart terminated him because of disability, § 12112(a). The district court's summary judgment dismissal of both rested on erroneous evidentiary rulings and misapplication of Rule 56 and the ADAAA.

First, the court abused its discretion by overruling Capers's evidentiary objections and relying on inadmissible, unauthenticated, and irrelevant records. Walmart submitted no affidavits or declarations to authenticate its exhibits as business records, and many were undated, expired, or unrelated to Capers. Exclusion of those exhibits would have left Walmart unable to carry its initial Rule 56 burden as to Capers's discrimination claim or to  produce a non-discriminatory reason for either claim.   Even if considered, the records were inconsistent, remote, and reinforced pretext rather than negating it.

Second, the court erred by applying the pre-ADAAA "severity" standard Congress abolished and by sustaining Walmart's evidentiary objections to Capers's submitted witness declarations without allowing Capers to respond. Diabetes is a disability in virtually all cases under the ADAAA, and Capers's diabetes and post-stroke limitations independently meet the statutory definition. The court wrongly

excluded testimony showing Walmart's knowledge of Capers's impairments and drew all inferences in Walmart's favor, contrary to Rule 56.

Properly assessed, the burden never shifted to Capers because Walmart's own evidence failed to show the absence of a factual dispute and, in fact, produced direct or mixed-motive evidence of discrimination requiring trial. Even if Walmart's initial showing were sufficient, the record, viewed in the light most favorable to Capers, demonstrated that he had an actual disability for which accommodation should have been discussed and that his employment was terminated because of disability, actual or perceived. Had the court not hastily excluded Capers's declarations and misread the record, the burden would have shifted to Walmart to articulate a legitimate reason, which it could not do. Its stated reason—"inability to perform the job"—was itself tainted by discriminatory animus.

The one-day gap between Capers's disclosure and termination, Walmart's shifting explanations, and its failure to follow ADA procedures further underscore pretext.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*. Summary judgment is proper only where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The evidence must be viewed in the light most favorable to the non-moving party, and all

reasonable inferences must be drawn in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Credibility determinations and weighing of the evidence are for the jury, not the judge. *Tolan v. Cotton*, 572 U.S. 650, 660.

A district court's evidentiary rulings are reviewed for abuse of discretion and prejudice to a party. *Ballard v. Burton*, 444 F.3d 391, 401 (5th Cir. 2006); *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Ebron,* 683 F.3d 105, 133 (5th Cir. 2012).

# ARGUMENT

## ISSUE I.  The District Court Erred in Granting Summary Judgment Because It Relied on Inadmissible Evidence and Misapplied Rule 56( c)(2)

A.     Applicable Provisions of Rule 56

Rule 56(c) permits a party to support a fact at summary judgment by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or "by showing that the cited materials do not establish a genuine dispute or that the opponent cannot produce admissible evidence." Fed. R. Civ. P. 56(c)(1)(A)–(B). But when the nonmovant objects that cited material "cannot be presented in a form that would be admissible in evidence," Rule 56(c)(2) squarely applies. At that point, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee's note (2010).  Because Capers objected, Walmart had the responsibility to "remed[y] any defects by, for example, filing a declaration authenticating [the challenged documents]." *Maurer v. Independence Town*,  870 F.3d 380, 384-85 (5th Cir. 2017). Nothing in the 2010 amendments relaxed the relevance requirement of Fed. R. Evid. 401.

12

1. Capers Objected, Shifting the Burden to Walmart.

Capers objected to Walmart's summary judgment evidence and asked the court to exclude it from the summary judgment record. [1]ROA.360. Capers identified defects of authentication, hearsay, and lack of relevance. Capers's objection functioned "much as an objection at trial, adjusted for the pretrial setting." Fed. R. Civ. P. 56 advisory committee's note (2010)Comments. This shifted the burden to Walmart, as the proponent of the evidence, "to show that the material is admissible as presented" or "to explain the admissible form that is anticipated." *Id.* Walmart did neither. Without analysis, the court overruled Capers's objections. ROA.809. This was legal and prejudicial error as to Walmart's exhibits E, F, G, I, J, K, L, O, P-W and X (the "Challenged Exhibits").

2. Walmart Failed to Show that the Challenged Exhibits were Admissible as Presented or to Explain the Admissible Form it Anticipated.

Walmart argued the Challenged Exhibits were relevant business records. Walmart produced no declaration or affidavit of any Walmart employee or records custodian, or other witness to explain the admissible form it anticipated it would use

---

[1] Specifically, Capers objected to Walmart's Ex. D, "Termination Event," ROA.216; Ex. E. "Job Description," ROA.217-218; Ex. F. "Discrimination Policy," ROA.219-222; Ex. G. Global Ethics Policy, ROA.223-226; Ex. I, Disciplinary Policy effective Sept. 17, 2018, ROA.268-270; Ex. J, National Accommodations Policy, ROA.271-274; Ex. K, Louisiana Accommodatons Policy, ROA.275-277; Ex. L, ADA Policy, ROA.278-282; Ex. M, Power Failure policy, ROA.283; Ex. N, Associate Spreadsheet, ROA.284-295; Ex. O, Coachings Spreadsheet, ROA.296-307; Ex. P, Checklist, ROA.308, Ex. Q, Tour Notes of multiple Stores, ROA.309-310; Ex. R, "Spark Market," ROA.311; Ex. S, Undated Dashboard, ROA.312; Ex. T, Gas Station, ROA.313-314, Ex. U, Review Schedule, ROA.315-316; Ex. V, Bakery Table, ROA.317-318; Ex. W, Security Video May 2018, ROA.319-323. Ex. X, Exit Interview, ROA.324.

at trial to lay an evidentiary foundation that these were its business records. Instead, Walmart relied solely upon the argument of its counsel that the challenged documents were manifestly business records because (1) they had been produced to Capers's counsel during discovery; (2) some bore Walmart's logo or corporate identifier; (3) Capers had produced a copy of the Exit Interview in his responses to discovery; and (4) some of the challenged documents (the Exit Interview, Job Description, Global Ethics Policy, and the Disciplinary Action Policy) had been presented to Capers during his deposition. These explanations did not meet the criteria for the business record exception to the rule excluding hearsay.

Discoverable evidence is not necessarily admissible evidence. Discovery production proves only that a party possesses a document, not that the document is admissible for any purpose over objection.

It takes more than a logo to make a business record. The court's reliance upon the presence of Walmart's logo on some documents is untenable. To qualify as a business record the proponent must show through a custodian or other qualified witness that the record was made at or near the time of the event by someone with knowledge; that it was kept in the course of a regularly conducted business activity; that making such records was a regular practice of that business; and that neither the source of information nor the circumstances of preparation indicate a lack of trustworthiness. See Fed. R. Evid. 803(6)(A)-( E). The proponent of the evidence

must lay the requisite foundation for use as a business record. *United States v. Brown*, 553 F.3d 768, 792-793 (5th Cir. 2008).   Walmart made no attempt to produce an affidavit or declaration from a records custodian laying the requisite foundation.  It was error for the court to conclude that Walmart's documents were business records because some of them bore a Walmart logo.

### 3. Walmart Failed to Demonstrate Relevance of Most of its Documents.

Walmart also failed to establish that many of the documents were relevant. Few are dated or bear a date that places them within any temporal proximity of the events at issue.  Walmart claimed Capers was under a "Red Level" Final Coaching from July 2018, arguing it remained effective through his February 2019 termination. Although the July 2018 power outage  coaching is undisputed, Walmart produced no admissible evidence linking it to the termination decision seven months later. Its only support—the disciplinary policy (Ex. I, ROA.268–270)—was dated September 2018 and thus could not retroactively govern a July 2018 event. Moreover, Walmart's own "coaching spreadsheet" (Ex. O, ROA.296) listed the July 2018 coaching as expired. Walmart offered no explanation why an expired coaching was relevant to its decision to terminate Capers. Exhibits D, I, and O should have been excluded, and the July 2018 coaching disregarded.

The purported discrimination policy (Ex. F, ROA.219–222) was irrelevant, as it applied only to New York and California, not Louisiana. Walmart also presented no admissible evidence showing that the job description (Ex. E, ROA.217–218) applied to Capers, and its Global Ethics Policy (Ex. G, ROA.223–226) was unrelated to any fact in dispute.

### 4. Documents Proffered as Proof of Negative Feedback were Irrelevant Hearsay.

Walmart relied on Exhibits P–W to suggest "negative feedback," but none were authenticated, admissible, or tied to Capers's performance or termination. These documents—miscellaneous notes, screenshots, and emails of unknown origin—were unauthenticated hearsay with no showing that decisionmakers relied on them or that they were business records. Most involved multiple managers, not Capers alone, and there is no evidence any were disciplinary, resulted in coaching, or were even considered in the termination decision.

Collectively, these materials are nothing more than workplace ephemera, transient communications sent and forgotten, never intended to be preserved, relied upon, or treated as evidence of employee performance. Their form and context confirm they were not part of any formal record and carry no indicia of reliability. Because these were manifestly not business records, and their probative value is nil, the district court erred in overruling Capers's objection to Exhibits P-W.

5.  The Erroneous Admission of the Challenged Exhibits Infected the Court's Entire Rule 56 Analysis.

The court dismissed Capers's objections with a single cursory paragraph, invoking "broad discretion" and claiming relevance and authentication without identifying which exhibits met the evidentiary standards, or how hearsay was cured. The district court's reliance on unauthenticated and hearsay evidence fatally tainted its Rule 56 analysis. The court accepted them to find that Walmart lacked knowledge of Capers's accommodation request and had a legitimate, performance-based reason for termination. Properly excluded, the record would have shown only Capers's strong work history, documented medical limitations, a request for an accommodation, immediate dismissal, and conflicting termination records, creating genuine issues of material fact. Because the court's summary judgment ruling rested on inadmissible evidence, reversal is required.

## ISSUE II.  The District Court Erred in Granting Summary Judgment on Capers's Failure to Accommodate Claim

### A. The District Court Used a Standard Congress Expressly Abolished to Find that Capers Did Not Have an Actual Disability.

To establish a prima facie case under the ADA for failure to accommodate a disability, the plaintiff must prove (1) the plaintiff is a qualified individual with a disability;  (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations.  *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013).

The only disputed elements of Capers's claim were whether he had an actual disability and whether Walmart knew of the disability and its limitations. To reach its conclusion that Capers did not have an actual disability, for purposes of the failure to accommodate claim, the district Court applied the pre-ADAA "Severity Standard" expressly rejected by Congress. The district court concluded that Capers "was not disabled" because he "routinely performed his daily duties at Walmart" and post-termination accepted a more physically demanding job with another employer. (ROA.804–805). That reasoning revives the pre-ADAAA "severity" test Congress expressly abolished.

Congress enacted the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, 42 U.S.C. §12101, *et seq*., to restore the broad protections originally intended by the ADA. The ADAAA explicitly overturned *Sutton v. United Air Lines, Inc*., 527 U.S. 471 (1999), and *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002), which had limited coverage to individuals nearly incapable of performing major life activities. Congress declared those decisions "inconsistent with the ADA's broad remedial purpose" and directed that "the definition of disability shall be construed in favor of broad coverage ... to the maximum extent permitted." 42 U.S.C. § 12102(4)(A). The Fifth Circuit has likewise recognized that the ADAAA "expressly broadened the definition of disability" and "eliminated the strict standard" of *Sutton* and *Toyota*. *Neely v. PSEG*

*Tex., Ltd.*, 735 F.3d 242, 245–46 (5th Cir. 2013). The ADAAA further provides that determining whether an impairment substantially limits a major life activity "shall not demand extensive analysis." *Id.*

Because it measured disability by pre-2009 criteria—emphasizing functional capacity rather than substantial limitation of a bodily function—the court applied the wrong legal standard. That error alone warrants reversal.

### B. Properly Analyzed Under the ADA, as Amended, Capers Established that He Had an Actual Disability.

Capers had uncontrolled diabetes. ROA.627-628. He had suffered a stroke, and controlling his diabetes was essential to his care and recovery. ROA.381-382. The stroke resulted in slurred speech, unsteady gait, weakness (particularly the right side), fatigue, and significant reduction in the use of his right hand and Capers's diabetes was closely monitored thereafter. ROA.481-483.

The ADAAA's regulations state that certain impairments, "in virtually all cases," satisfy the definition of disability. 29 C.F.R. § 1630.2(j)(3)(ii). Diabetes is one of those impairments. Therefore, "it should easily be concluded" that diabetes substantially limits endocrine function. *Id.* Neither Walmart nor the court offered any justification for departing from the regulatory presumption as to Capers's diabetes. The regulation does not allow deviation; it directs that the assessment "should be particularly simple and straightforward." The district court's refusal to recognize diabetes as a disability misapplied controlling law.

But Capers did not rely on diabetes alone. He presented substantial evidence of post-stroke neurological and functional limitations that the district court abused his discretion by excluding. Mrs. Capers testified that her husband dragged his right leg, lost balance, and had reduced strength in his right hand, frequently dropping objects or struggling with fine motor tasks. She further described his slurred speech and fatigue after mild exertion. ROA.372-373. These conditions substantially limited walking, speaking, and manual tasks, each a major life activity under 29 C.F.R. § 1630.2(i)(1)(i). The record thus compels a finding that Capers was an individual with a disability within the ADA's meaning.

### C. Walmart Had Actual Knowledge of Capers's Disability and Request for Accommodation

#### 1. Knowledge Arises When an Employee Communicates a Medical Condition and Requests Adjustment

The district court erred in finding that Capers failed the "knowledge" element of his prima facie case. It (1) dismissed the February 6 email as too "general," (2) ignored admissible testimony from Nicole Capers and Tamonica Oes concerning their direct communications with District Manager Brian Ducote, and (3) overlooked Ducote's initial cooperation in facilitating Capers's request to step down.

An employer's duty to accommodate under the ADA arises once it knows of an employee's disability and resulting limitations and the employee requests assistance to perform essential duties. It is the responsibility of the individual with

the disability to inform the employer that an accommodation is needed." *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996), *Feist* 730 F.3d 452–53 (5th Cir. 2013).

The employee does not have to use the word "accommodation," invoke any magic words or use any special forms; notice is sufficient if the communication would cause a reasonable employer to understand that the request relates to a medical condition. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). "Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations … and requested an accommodation in direct and specific terms." *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020).

"[A] plaintiff need not request, or even know, the particular reasonable accommodation he ultimately requires. *Windham v. Harris County*, 875 F.3d 229, 237, n. 11 (5th Cir. 2017). As the Seventh Circuit observed, if a disabled employee says simply, "I want to keep working for you — do you have any suggestions?", the employer must explore available work the employee could perform. *Miller v. Ill. Dep't of Corr.*, 107 F.3d 483, 486–87 (7th Cir. 1997) (citing 42 U.S.C. § 12111(9)(B)). Once that threshold is met, the employer bears an affirmative duty to engage in the interactive process. *Taylor*, 93 F.3d at 157.

## 2. Capers's February 6, 2019 Email Provided Direct Written Notice of Disability and Accommodation Request

Capers's email, ROA.325, provided sufficient information to trigger Walmart's obligation to engage in an interactive process regarding accommodation of disability. Titled "Request," the email identified two chronic medical conditions, hypertension and diabetes, each presumptively covered by the ADAAA as substantially limiting the circulatory and endocrine systems. By referencing two recent hospitalizations, the message linked those conditions to work-related limitations affecting his attendance. Hospitalizations themselves constitute evidence of substantial limitation. *Mahoney v. Ernst & Young, LLP*, 487 F. Supp. 2d 780, 812 (S.D. Tex. 2006) (hospitalizations evidenced substantial limitation of a mental-health impairment); *Martínez-Negrón v. Coca Cola P.R. Bottlers*, 2016 U.S. Dist. LEXIS 201860, at *58–59 (D.P.R. Mar. 31, 2016) (jury could find hospitalizations to be substantial limitations).

Capers's email explicitly sought an adjustment: he asked to "step down" and explained that his physician had recommended a "job change." The ADA specifically identifies "reassignment to a vacant position" as a reasonable accommodation. 42 U.S.C. § 12111(9)(B).

## 3. The Email Reinforced Walmart's Preexisting Knowledge Through Management and HR

Had the email stood alone, it was sufficient, but it did not stand alone. Before sending the email, Capers had already located assistant-manager vacancies and discussed the transfer with HR, his supervisor, and the other store manager and secured their consent. ROA.664. Further, Walmart's management and HR already knew of Capers's impairments. Capers's supervisor, Market Manager Brian Ducote and HR Representative Matthew Baker had been informed months before the email of Capers's stroke, hospitalizations, and resulting limitations through communications from Capers's subordinate, assistant manager over operations, Tamonica ("Mona") Oes, from Capers's wife, Nicole Capers, and from Capers himself.

Capers's assistant manager, Oes, testified that she personally witnessed Mr. Capers become ill at work. She contacted his wife, who took him to the emergency room. Oes later called to check on Capers and learned he was suffering from high blood pressure, was threatening a stroke, and would remain hospitalized for several days. ROA.662. Oes testimony was based on her first had observation of Capers, as well as the information she received from Capers, the store manager, in her capacity as his operations manager. In her capacity as an employee she conveyed that information to her and Capers's supervisor, Market Manager Ducote.

In its reply brief, Walmart objected to the testimony of Mrs. Capers and Oes. The district court entered its ruling precisely seven days later, excluding Oes

testimony as hearsay.  Given opportunity, Capers could have demonstrated that Oes's communications were  both based on her personal observations, her direct communications, and were non-hearsay admissions of a party opponent under Fed. R. Evid. 801(d)(2)(D).  The court abused its discretion by not giving Capers, as the non-movant " an adequate opportunity to respond prior to a ruling." *Thompson v. Dall. City Att'y's Off.*, 913 F.3d 464, 471 (5th Cir. 2019) (quoting *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004)).

The court similarly failed to allow Capers opportunity to respond to Walmart's objection to point out the admissible portions of Mrs. Capers's declaration and her personal conversations with Ducote when her husband was hospitalized.  Her testimony would have established Ducote's actual knowledge of the prior stroke, the recurrent stroke symptoms that had stricken Capers at work that day, and explained how Walmart's HR department would have known to send Mrs. Capers (not Mr. Capers) a critical incident claim form and direct her to return it to Walmart (not the insurer). Mrs. Capers also testified that her husband's speech was slurred and that she gave the phone to her husband so he could talk directly to Ducote. Capers's slurred speech should have made the impairment obvious to Ducote.

### 4. Ducote and Baker's Cooperative Actions are Evidence of Walmart's Knowledge

Before Capers submitted his February 6, 2019, email, HR representative Baker and Market Manager Ducote had already told Capers that they supported his request for re-assignment. Baker had already received a request from Kamesha West, manager of a different store, to have Capers re-assigned to her store as an assistant manager. ROA.664. The day before Capers's email, Ducote met with Capers at West's store (the anticipated reassignment location), where they discussed the reasons Capers wanted to step down. ROA.487 at line 24-25; ROA.488. Ducote told Capers to send the email requesting the job change. ROA.488. Ducote's choice of venue supports the inference that he approved and was facilitating the requested step down.

The court faulted Capers for not submitting medical proof of disability to Walmart's Accommodation Service Center ("ASC"), accepting defense counsel's arguments and interpretations of Walmart's accommodation policies, Exhibits K, L and M as admissible evidence, despite Capers's objection. Even if the policies were properly admitted, it was error for the Court to accept the argument of Walmart's counsel as to the interpretation of these policies. Each policy prioritizes local resolution of accommodation requests whenever possible. An associate may request an accommodation by informing "any salaried member of management or HR representative" that assistance is needed because of a medical condition. ROA.275–277.

Ducote and Baker were already cooperating with Capers at the local level to facilitate a step down, possibly to West's store, when Capers was fired. Under the policies, only if local accommodation is denied or impractical does the policy require referral to the ASC, at which point Walmart was to provide the employee a medical questionnaire and allow the employee twenty days to return it. When Ducote told Capers the day after his email, "I can't do it," indicating the request could not be processed at the local level, Walmart's proffered policy allowed Capers opportunity to submit his request to the ASC. Walmart fired him before he could do so. As the Fifth Circuit has held, an employer "may not stymie the interactive process by preemptively terminating the employee before an accommodation can be considered or recommended." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). Yet that is precisely what Walmart did.

**ISSUE III: Walmart Failed to Carry Its Initial Rule 56 Burden on Capers's ADAAA Discrimination Claim and the District Court Erred in Granting Summary Judgment on that Claim.**

A.    Under Rule 56, the Court Was Required to Examine Walmart's Initial Showing, Drawing all Reasonable Inferenced in Capers's Favor, Before Shifting any Burden of Response to Capers.

Rule 56(a) authorizes summary judgment only when "the movant shows that there is no genuine dispute as to any material fact." That initial showing must come from the movant itself. As the Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970), the movant "bears the burden of showing the

absence of any genuine issue of fact," and "summary judgment must be denied even if no opposing evidentiary matter is presented" when that burden is not met.

The Fifth Circuit has adopted that rule without qualification: Summary judgment cannot be granted by default even if there is a complete failure to respond. The movant has the burden of establishing the absence of a genuine issue of material fact before the non-movant is required to respond. *John v. Louisiana Bd. of Trustees for State Colleges*, 757 F.2d 698, 708 (5th Cir. 1985). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

At every stage of the Rule 56 inquiry, including when assessing the movant's initial production, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *Anderson v. Hobby Lobby, Inc.,* 477 U.S. 242, 255 (1986)*; and Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000). Thus, the district court was required to evaluate Walmart's own evidence through that lens. Because Walmart's submissions created, rather than eliminated, factual disputes, the court erred in moving on to Capers's response at all.

B.   Walmart's Motion Addressed Only "Actual" Disability, Ignoring Other Routes.

Walmart argued only that Capers could not prove discrimination based on an actual disability. It did not address the ADA's other two statutory definitions of

disability: (1) having "a record of such an impairment," or (2) being "regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C).

Walmart's own evidence satisfied the ADA's "regarded-as" standard and established either direct or mixed-motive discrimination, precluding summary judgment. Direct evidence is evidence that, if believed, proves discriminatory intent without inference or presumption. *EEOC v. LHC Group, Inc*., 773 F.3d 688, 694–95 (5th Cir. 2014); *Jones v. Robinson Prop. Grp., L.*P., 427 F.3d 987, 992 (5th Cir. 2005). Under the mixed-motive framework, a plaintiff need only show that disability was a motivating factor, even if other reasons also played a role. *Rachid v. Jack in the Box, Inc*., 376 F.3d 305, 312 (5th Cir. 2004). Once such evidence appears, summary judgment is improper because issues of motive and causation belong to the jury.

Under 42 U.S.C. § 12102(3)(A), an employee is "regarded as" disabled if subjected to an adverse action because of an actual or perceived impairment, regardless of whether it limits a major life activity. Walmart's own exhibits fit that definition precisely: (1) Capers's February 6, 2019 email disclosing diabetes and hypertension that caused hospitalizations, and (2) Walmart's termination the next day citing his "inability to perform the job." These documents establish—not negate—discrimination under the ADAAA. Firing Capers immediately following his written disclosure of medical conditions that are almost always substantially

impairing under the ADAAA, because of Capers's "inability to perform the job," is quintessential "regarded-as" evidence.

Even if admissible, the Exit Interview (Ex. X) created competing inferences— one suggesting disability-based bias, the other poor performance. It was error for the court to resolve that conflict in Walmart's favor. By interpreting the "comments" in the Exit Interview to reach a conclusion that "inability to perform the job" was performance based, not Walmart's perception of Capers's physical abilities following receipt of his email, the district court improperly weighed evidence and resolved credibility issues in favor of the movant. That is legal error under Rule 56. *Tolan* 572 U.S. 650, 657 (2014).

Determining whether Walmart acted because of a perceived disability, for performance reasons, or for both is a jury question. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003); *Rachid*, 376 F.3d at 312; *Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010); *Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995). Because Walmart's own evidence raised a genuine dispute as to motive, it failed to carry its initial Rule 56 burden, and Capers was not required to establish a prima facie case.

### C. If the Burden Shifted, Capers Produced a Prima Facie Case for Each Claim and Walmart Failed to Produce a Non-Discriminatory Reason

The same evidence Capers submitted to establish an actual disability for his failure-to-accommodate claim also supports his discrimination claim. While an accommodation claim requires proof of an actual disability, a discrimination claim under the ADAAA does not; it is enough that the employer regarded the employee as having an impairment. Capers presented ample evidence that Walmart knew of his health conditions, formed the belief that he was substantially impaired, and acted on that belief when it terminated him for "inability to perform the job." Capers having met his burden, Walmart was required to produce a non-discriminatory reason. It could not do so for either of Capers's claims.

The burden therefore never shifted back to Capers to show pretext. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). However, the record is replete with evidence of pretext. The immediacy of the dismissal the day after Capers's email for a reason that is disability based; the cooperation of Ducote and Baker suddenly withdrawn, without explanation and with no evidence of any intervening performance issue or operational reason that would justify this abrupt shift, raise an inference of pretext. Further, three months after firing Capers, in May 2019, Walmart changed the dismissal code from "IPJ" "Inability to Perform the Job" to "Poor Job Performance." ROA.216. A shifting reason is evidence of pretext.

Walmart's argument that Capers could not be disabled because his high performance earned him a $45,000 bonus is inconsistent with its argument that he

30

was poorly performing. Walmart cannot plausibly claim Capers was both performing exceptionally (as his job performance evaluation and bonus reflect) and also performing so poorly that he was fired. These inconsistencies themselves support a finding of pretext. Walmart's failure to engage in the interactive process is additional evidence of pretext as to Capers's discrimination claim.

## CONCLUSION

The district court's judgment should be reversed because it misapplied both the ADAAA and Rule 56 in addressing two distinct claims.

On the failure-to-accommodate claim, the court applied the outdated "severity" standard that Congress expressly rejected, disregarded undisputed evidence that Capers's diabetes and post-stroke limitations meet the ADAAA's broad definition of disability, and wrongly found that Walmart lacked knowledge of those impairments. In doing so, it excluded the testimony of Tamonica Oes and Mrs. Capers—two witnesses whose firsthand accounts established Walmart's awareness of Capers's condition and its duty to engage in the interactive process. Considered properly, that evidence showed both disability and knowledge, satisfying the elements of the claim.

As to the discrimination claim, the court erred at the threshold by accepting a summary-judgment motion unsupported by admissible evidence. Viewing the record in the light most favorable to Capers, Walmart's own documents and the timing of the termination constitute direct evidence of discrimination, and the surrounding inconsistencies demonstrate pretext.

Appellant respectfully requests that this Court reverse the summary judgment and remand for trial on both claims.

SUBMITTED BY:

*/s/Pamela Robin Jones*
Downer, Jones, Marino & Wilhite, L.L.C.
401 Market Street, Suite 1250
Shreveport, LA 71101

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on counsel of record and has been transmitted to the Clerk of the Court.

Shreveport, Louisiana, this 12th day of November, 2025.

By: _____ */s/ Pamela R. Jones* _____
ATTORNEY FOR PLAINTIFF-APPELLANT

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 7,574 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word in 14-point font and Times New Roman.

3. THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETION OF THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN Fed. R. App. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

Shreveport, Louisiana, this 12th day of November, 2025.


*/s/ Pamela R. Jones*
Counsel for Plaintiff-Appellant